## Union Petroleum Co. *versus* Bliven Petroleum Co.

| | |
|---|---|
| 72 | 173 |
| 144 | 537 |
| 72 | 173 |
| 151 | 465 |
| 72 | 173 |
| 158 | 288 |
| 158 | 332 |
| 72 | 173 |
| e207 | 578 |
| 72 | 173 |
| f213 | 298 |

1. An agreement was to lease "the exclusive right and privilege of boring for oil, &c., upon the farm, upon which the first party now resides, with the right of access to and from such places as may be selected by the party of the second part * * * said boring to be done so as to do the least possible injury to the farm:" the consideration was $150 and one-third of product, the holes to be sunk to satisfy the parties as to practicability and profit for oil. This was incorporeal hereditament only.

2. The only possession the grantee had was such as was necessary to the exercise of the right.

3. The remedy for disturbance of the right was case; ejectment could not be maintained.

4. An ejectment was brought for the land on which wells had been sunk by persons claiming under the grant, at the suit of persons claiming title to the *land* under the same grantor, served on persons in possession, a verdict for plaintiffs and they put into possession by an *habere*. *Held*, not to be conclusive in an action for disturbance against persons claiming under the plaintiffs in the ejectment.

5. There being but one verdict it was not conclusive of the title; it was persuasive evidence only.

6. The possession of the land is not necessary to enable the owner of an incorporeal hereditament to maintain an action for its disturbance.

7. The court below was right in refusing to permit a record given in evidence, and containing depositions, &c., to go out with the jury.

October 22d 1872.    Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Venango county:* No. 26, to October and November Term 1871.

This was an action on the case commenced, September 3d 1869, by the Bliven Petroleum Company against the Union Petroleum Company.

The declaration was that the plaintiffs were the owners in fee of "certain incorporeal hereditaments, to wit, the right and privilege of digging and boring for salt, oil and minerals, upon certain lots, parts of a tract of land known as the John McClintock farm, * * * with the right of ingress and egress, * * * for the purpose of digging for said salt, oil and minerals, * * * giving to John McClintock one-third part thereof. Yet the defendants * * * entered on said lots * * * and into the possession of certain oil-wells which the plaintiffs had thereon and excluded the plaintiffs therefrom and from the enjoyment of their said right and privilege and obtained and collected large quantities of oil * * * which the plaintiffs could have collected for their own use."

The defendants pleaded "Not guilty."

The cause was tried before Trunkey, P. J., November 8th 1870.

By the plaintiffs' evidence it appeared that the land upon which the wells were, belonged to John McClintock and was situated in Cornplanter township, Venango county.

On the 26th of September 1859, an agreement was entered into

between John McClintock of the first part, and Bradford R. Alden and Cornelius S. Chase of the second part, as follows :—

"That the said party of the first part, for himself, &c., agrees to and with the said second party, their heirs, &c., to lease, and by these presents has leased, unto the said second party, &c., the exclusive right and privilege of boring for salt, oil or minerals upon his farm, situate in Cornplanter township, &c., and upon which the said first party now resides, being two hundred acres, more or less, with the right of access to and from such places as may be selected by the party of the second part for the purposes aforesaid, and the right to build such houses and buildings as shall be necessary to carry on the work ·comfortably ; said boring to be done so as to do the least possible injury to the farm.

"And the said party of the second part, for themselves, &c., agrees to and with the said party of the first part, that they will give to the said first party for the privileges hereinbefore granted, the sum of one hundred and fifty dollars, and the just and full one-third part of all the oil and minerals raised and the salt made from and upon the premises aforesaid, and that the work shall be commenced on or before the first day of June, eighteen hundred and sixty, and that the holes shall be sunk to a suitable depth to satisfy the parties as to their practicability and profit for oil. And it is agreed that this lease shall continue until the parties, their heirs or assigns, shall mutually agree to annul it. * * * It is further understood, that the obligations to bore, of this lease, on the part of the party of the second part, shall be fulfilled when they have made one boring of sufficient depth to be profitable to them for oil, or when they shall have made one boring of seventy feet depth, if practicable, and shall pay to the party of the first part the sum of seventy-five dollars, and the same obligations to bore shall be fulfilled at any time by the payment to the party of the first part of the sum of one hundred dollars."

By a partition subsequently the title became vested in Alden alone. On the 28th of January 1865, Alden conveyed to the Bliven Petroleum Company, the plaintiff.

The plaintiffs gave evidence also, that the defendants had occupied by their agents, a portion of the land leased to Alden and Chase, had worked the wells put down by Alden, and excluded the plaintiffs from occupying it ;—also of the quantity and value of the oil raised and appropriated by the defendants. They gave evidence also as to the lines of the land included in their lease. There was evidence also, that Allen Wright had a lease from Alden and Chase, afterwards passed to the "Allen Wright Oil Co.," and sunk wells known as No. 81 and No. 84, on what was claimed to be covered by the lease to Alden and Chase. The defendants claimed the wells to be on their lands :—this suit is brought for the disturbance of the plaintiffs' rights and privileges in these wells.

[Union Petroleum Co. v. Bliven Petroleum Co.]

The defendants gave in evidence the records of the Circuit Court of the United States for the Western District of Pennsylvania, in an action of ejectment, in which the Union Petroleum Company, a citizen and corporation of the state of New York, were plaintiffs, and George King, S. A. Lyon and R. Green, citizens of Pennsylvania, were defendants. The record showed as follows :

The marshal returned the writ served on the defendants, and also on D. F. Myer, George Crippin and Samuel Davidson.

The premises described in the writ were "a strip of land in Cornplanter township, Venango county, containing 6 acres; being 160 perches long by 6 perches and 2-10 wide; bounded on the north by the Rynd farm, on the east by other land of this plaintiff, on the south by the Buchanan farm and on the west by land known as the McClintock farm."

October 6th 1865, a rule was taken on the defendants to appear in six weeks. The marshal returned that the rule had been duly served upon King, Lyon and Green.

An affidavit of defence was made by Allen Wright, a director of the Allen Wright Oil Company, "which has the lease, management and control of the land and property from which the plaintiffs seek to eject the defendants," and averred that the defendants had "a just and legal defence on the merits."

This affidavit was filed November 29th 1865.

On the 5th of March 1866, the defendants pleaded "Not guilty." On the 10th of March 1866, the court appointed William Hilands "to survey the claims of both parties and to ascertain the quantity and interference of each party, and to note such circumstances as may affect or be deemed material to the title of either of the parties."

The jury found for the plaintiffs, "and fixed the western line of the plaintiffs' land as the line run by William Hilands, the artist appointed by the court, and marked on his plot by the signature of the clerk of the court, which plot is now filed of record as part of the verdict in the case," &c.

A writ of habere facias was issued on the 25th of January 1867, to which the marshal returned :—

"And now, this 31st day of January 1867, entered upon the within named premises, ' defendants all being absent,' and placed E. W. Hinds, agent Union Petroleum Company of New York, in full possession of same. No property of the defendants found."

The defendants then gave in evidence the map made by Hilands under the direction of the Circuit Court; also deed, dated May 19th 1860, from John McClintock to John Nelson McComber, granting to McComber for the consideration of $1500, a piece of land in Cornplanter township, beginning at a black-oak, the southeast corner of McClintock's farm, "thence north, &c., to the north-east corner thereof, thence west 35 chains and 64 links or

far enough so that a line drawn south through said lot shall contain 130 acres, and thence south or to the Buchanan farm, thence east, &c., to the beginning, containing 130 acres." They then gave evidence, tracing this title to the defendants on the 29th of June 1864. They gave evidence that McClintock had contracted by articles for the sale of this land to Richard Dempsey, who sold his interest to McComber, and the deed made as above stated directly from McClintock to McComber. The evidence was that, at the time of the contract between McClintock and Dempsey, the land was unimproved and in wood, and was so when sold by Dempsey to McComber. Hilands testified that according to the line run by him, well 84 would be within the claim of the defendants, and that the line ran through well 81. There was evidence of a line run by Irvine, which put both wells on the plaintiffs' claim; and also of acquiescence in that line by McClintock, Dempsey and McComber, predecessors in title to the defendants, and that the plaintiffs had been using the wells until the defendants were put into possession by the habere facias from the Circuit Court of the United States.

The charge of the court and the defendants' points and answers following, with the foregoing statement, will sufficiently exhibit the case.

The court charged:—

" This action is for the recovery of damages plaintiffs allege they have suffered by reason of a disturbance or hindrance of their rights to enter and take oil from a tract of land owned by McClintock—I speak of him as the owner, for he contracted as such and so conveyed portions of the tract—and others who were interested with him, subsequently released to his grantees, confirming his respective contracts and conveyances. It is unnecessary to say anything about the title which was vested in John McClintock, for both parties claim under him. The plaintiffs claim under the articles of agreement dated September 26th 1859, with its supplement, made by Alden and Chase. The defendants claim under a deed by McClintock to J. Nelson McComber, dated May 19th 1860. Neither party questions the right of the other under their respective grants. It is not denied that the right of Alden and Chase, so far as relates to this action, have become vested in the plaintiffs, nor that the title of J. Nelson McComber is now vested in defendants. You observe at once, that the contest is not about the plaintiffs' right to take oil from the land of McClintock, nor as to the validity of the defendants' title to the land embraced in the deed to McComber, but is as to the true location of the division line between the part sold to McComber and the balance of the tract.

" As a rule, known landmarks and adjoiners on the ground bounding a tract of land conveyed, control the courses and

[Union Petroleum Co. *v.* Bliven Petroleum Co.]

distances in the deed; if there is a difference between the description in the deed and the marks on the ground, the latter govern; when there are no marks on the ground, or certain adjoiners, then the description in the deed is conclusive. A conveyance of a certain number of acres off one side of a tract of land, when there is no line of division marked, entitles the grantee to the entire quantity conveyed, as called for in the deed. If there was a survey and the division line distinctly marked on the ground, and the deed apparently made with reference to the survey and line, in the absence of other evidence, the line so marked bounds the land conveyed.

" The land in dispute is a piece a few rods wide, extending across the McClintock tract. Prior to October 16th 1866, it seems that the plaintiffs were exercising their alleged right on this land, and had possession of so much of the surface as was necessary to the enjoyment of the grant, their lessees actually operating and producing oil; and McClintock had possession for all other purposes. Since that date the defendants have been in possession, and they claim the right to hold it for all purposes, including operations for producing oil.

" The plaintiffs allege that defendants have obstructed and hindered them from exercising any right on the land since the fall of 1866. How is this? for if you are not satisfied from the evidence of such obstruction and hindrance, there can be no recovery. This is not an action of ejectment to recover possession of the land, nor trespass for injury done to plaintiffs' possession; but case for obstructing and hindering the plaintiffs in the exercise of an alleged right; and if no obstruction or hindrance, your verdict will be for the defendants.

" Had McClintock himself interfered with plaintiffs' right to enter and take oil, the remedy would be the same as that now sought to be enforced against defendants. If he were asserting and attempting to enforce his rights to the possession of the soil, his remedy would be ejectment or trespass. For an injury done to the owners of an easement or incorporeal hereditament, case is the remedy.

" If you find that defendants, having possession of the land since the fall of 1866, have prevented the plaintiffs and their agents from exercising the right to search and obtain oil therefrom, the next inquiry is as to the title of the disputed land. From the evidence, you are likely to find that McClintock in 1857 or 1858, by agreement in writing, contracted to sell and convey unto Richard Dempsey one hundred and thirty acres of land and allowance, off the east end of the tract, and that Dempsey by oral agreement sold his equitable title to McComber, to whom McClintock made the deed, dated 19th of May 1860, at Dempsey's request. Before the execution of this deed, McClintock and

22 P. F. SMITH—12

Dempsey agreed that Irwin should survey the land, and he did so, McClintock and Dempsey's father being present and assisting. If this survey was not correct, either could have had it re-surveyed. Both knew the manner in which it was made, or could have known, Dempsey having employed his father to assist in making it. If the surveyor was acquainted with and knew the distance of the tract line, as measured on the ground, and for this reason only measured one line to ascertain the place to mark the line of division, it was a sufficient survey, and binding if acquiesced in by the parties. Was this survey and the line marked on the ground by Irwin, referred to as the boundary in the deed ? At that time there had been no other survey, no other but the one division line was marked.

" The Hilands line was not run until after the dispute and commencement of the suit in the Circuit Court of the United States.

" You will remember the testimony of McComber, who testifies that the line was spoken of at the time of the delivery of the deed, and McClintock agreed that if it was not far enough west to include the quantity, it should be changed. Do you find this to be the fact ? If so, the defendants have a right to the quantity, the same as if no line were marked. In determining this question, you judge of the credibility of witnesses, and consider every fact proven that throws any light upon it. The deed gives the distance of each line from corner to corner, and as a part of the description adds that one line should go far enough to include the quantity. If there was no line marked on the ground, or if it was agreed that the marked line should be changed, if not including the quantity, the defendants have a right to a line that will include it.

" But if there was no such agreement, and the survey made and line marked, you may infer that the deed was in reference thereto. In this connection you will consider how the parties claimed and occupied after their making the deed.

" The plaintiffs allege that McClintock held possession and occupied up to this line without objection till near the time of the commencement of the suit in the United States Court, and that McComber, and those holding under him, only claimed, cut timber, improved and occupied up to this line for a number of years. Is this allegation true or false ? If true, such acts of the parties will be considered as tending, with other evidence, to show the marked line was referred to in the deed. If false, there will be the greater reason to credit the testimony of McComber as to what he says of the changing of the line so as to include the quantity. If you find that the survey of Irwin was satisfactory to McClintock and Dempsey, that the deed was made in reference to that survey, and the line of division marked on the ground, and that McClintock and McComber, and those holding under them, recognised it, occupied and claimed to it, as the true line, for several

years, it ought not to be disturbed, even if it be found that there is not the entire quantity called for embraced in the boundaries. Having made these remarks, that you may better understand the case, the answer to the points will be submitted. Should you find for the plaintiffs, the remaining question for you is the amount of damages. The damages will not exceed the actual injury done to the plaintiffs. The burden of proof is on the plaintiffs to show the extent of injury done, and you will not allow them more than a fair compensation for such injury ; although it may be difficult to prove, they cannot recover more than is proved.

" In estimating the damages you will allow only for the oil taken, which belonged to the plaintiffs, and not for the part belonging to their lessees."

The defendants' points and their answers were :—

1. The certified copy of the record of the Circuit Court of the United States, in the case of the Union Petroleum Company against George King, L. Lyon, R. Green and others, said record being in evidence and being ejectment and for the land upon which the trespass or disturbance is alleged by the plaintiffs to have been committed, and the said record showing that the plaintiffs, the Union Petroleum Company, recovered said land and were put in possession by the United States marshal, the defendants would be rightfully in possession, and could not be either trespassers or disturbers by reason of said possession, acquired by law and the judgment of a court having jurisdiction of the subject-matter and the parties.

" Answer : In reference to the facts in this case, answered in the negative. The judgment in that case is conclusive on all the parties and their privies. Had the plaintiffs in this case been a party to that action, there could be no recovery in the present action. But the Bliven Petroleum Company, or any one under whom they claim, or their lessees, the Allen Wright Oil Company, are not parties to that suit in ejectment, and are not bound by the judgment. The real owner of the land, or of an interest therein, shall not be defrauded of his title by a suit and recovery whereof he had no legal notice. The owner of the land ought to be made a party by the service of the writ, or should not be deprived of his right, by any judgment thereon. As to King, Lyon, Green and the other defendants, the return of service does not show they were tenants of the plaintiffs, the Bliven Petroleum Company. But the judgment is conclusive as to them, until reversed or set aside by the proper tribunal. Were they, or those under them, the plaintiffs, there could be no recovery here by anything done by the defendants, up to the Hilands line. That verdict and judgment fixed the western boundary and protected the defendants against the parties, but in no particular as against those who were not parties or privies."

2. The service of the writ on the defendants, George King and others, and shown by said record of the Circuit Court of the United States to have been served upon the tenants in possession, is evidence that they were the persons in actual possession.

6. The plaintiffs cannot recover in this form of action, unless they show to the satisfaction of the jury, that they were in actual possession of the premises, upon which the disturbance is alleged to have occurred; and if the testimony of Allen Wright and Nelson (witnesses called by the plaintiffs) is believed, and it is not contradicted, the Allen Wright Oil Company was in possession at the time the acts complained of took place, and Allen Wright testifies that he and his associates sunk wells No. 81 and 84, pumped them for more than six months, and then transferred their interest and possession to the Allen Wright Oil Company. If this testimony is believed the plaintiff has not been in possession and cannot recover.

Answered in the negative.

The defendants proposed to send out with the jury the certified copy of the record in ejectment, in the United States Circuit Court, including as thereto attached, all affidavits, depositions and other copies of papers, to which plaintiffs objected. The court refused to permit the record, with such papers attached, to be sent out with the jury, and at the request of defendants sealed bill of exceptions.

The jury found a verdict for plaintiffs for $8190.

The defendants took out a writ of error.

They assigned for error the answers to the defendants' points, submitting to the jury the question of damages, there being no evidence of injury to the plaintiffs, and the refusal to allow the record of the Circuit Court to go out with the jury.

*G. De Camp*, for plaintiffs in error, cited:—As to service on parties in possession, Act of 13th April 1807, sec. 2, 1 Br. Purd. 533, pl. 5; Cooper *v.* Smith, 9 S. & R. 26; Dietrick *v.* Mateer, 10 Id. 151; Gratz *v.* Benner, 13 Id. 110. By an ejectment against tenant in possession, the landlord's *possession* would be affected, although his title might not be: Johnson *v.* Fullerton, 8 Wright 466; Davidson *v.* Barclay, 13 P. F. Smith 406. The plaintiffs in this case could have sustained ejectment: Karns *v.* Tanner, 16 P. F. Smith 297; Tidd's Practice 1213.

*C. Heydrick*, for defendants in error.—Case is the appropriate remedy for injury to an incorporeal hereditament: Funk *v.* Haldeman, 3 P. F. Smith 229; Black *v.* Hepburne, 2 Yeates 331; Cooper *v.* Smith, 9 S. & R. 26.

The opinion of the court was delivered, October 28th 1872, by

[Union Petroleum Co. *v.* Bliven Petroleum Co.]

SHARSWOOD, J.—The title of the plaintiffs below, derived under the articles of agreement of September 26th 1859, between Mc-Clintock, the owner of the land, and Alden and Chase, was to "the exclusive right and privilege of boring for salt, oil or minerals," upon the McClintock farm, in Cornplanter township, Venango county, and in that respect was not to be distinguished from that which came under consideration and was passed upon by this court, in Funk *v.* Haldeman, 3 P. F. Smith 229. It is true that the word "exclusive" was not used in the grant in that case, yet upon the construction of the instrument it was held to be exclusive, and that the grantors had no mining privileges in common with the grantees. There, as here, the right granted was to experiment for oil; if found, to sever it from the land, and to take it, on yielding a third to the landlords as a chattel, not as any part of the realty. And the only possession to which the grantee was admitted was such as was necessary to the exercise of this right. The fact that one hundred and fifty dollars was in this case paid down in cash does not change the character of the grant. It was not, as in Caldwell *v.* Fulton, 7 Casey 475, a conveyance of the full right, title and privilege of digging and taking away stonecoal to any extent the grantee might think proper, which was held to be a conveyance of the entire ownership of the coal in place. It was, therefore, as in Funk *v.* Haldeman, the grant of a mere incorporeal hereditament. Indeed, we do not understand this to have been controverted in the court below, nor has it been made a question in this court. It follows that the only remedy which the plaintiffs had for the disturbance of their right was an action on the case. Ejectment they certainly could not have maintained.

What, then, was the legal operation and effect of the verdict and judgment in ejectment recovered by the defendants below in the Circuit Court of the United States? It certainly could have no other or greater force than a similar proceeding in a court of this state would have had. Giving it all the conclusiveness claimed for it, as it was a recovery of the land, it may well be doubted whether, not being for the same subject-matter now in controversy, it can have any effect whatever, even persuasive, upon the title of a person to what is only an incorporeal hereditament issuing out of, annexed to or exercisable within the land, unless indeed such incorporeal right was derived by grant from the party against whom the recovery was had, as to which no question is raised on this record for our determination. Had McClintock's title to the farm been set aside in favor of an adverse claimant, then indeed the grant must have fallen with it. But passing by this question, and admitting, for the sake of the argument, that the plaintiffs below were in fact the real parties in the action in the Circuit Court, or that it was a question which, upon the evidence, ought to have been submitted to the jury, it presented the case of only one verdict and judg-

ment in ejectment, which clearly was inconclusive of the title, even between parties and privies. Such a verdict and judgment are evidence in a subsequent ejectment only as persuasive. It is true that no action could have been maintained against the sheriff or the plaintiffs in the ejectment for the entry on the land by virtue of the *habere facias possessionem ;* but it by no means follows that when the plaintiffs in that proceeding were thus put in possession under that writ, it gave them any right to take the oil which belonged to the plaintiffs below, if indeed their title to it was otherwise established by the evidence, of which no question has been made for our decision upon this record. If it could establish such right, it would give an effect to one verdict and judgment in ejectment, which has never been thus far pretended or thought of, and for ever bar the owners of an incorporeal hereditament from any recovery whatever. It is not material, then, whether the reasons given by the court below for their answer to the first point of the defendants were right or wrong ; the answer in the negative was proper, and the plaintiffs in error have therefore no right to complain of it. Indeed the learned president seems himself to have come to this conclusion ; for, in his opinion on the motion for a new trial, printed in the plaintiffs' paper-book, he says :—" Perhaps it was error to say that one verdict and judgment would be conclusive on any one in an action like the present, who would have no remedy in any other form, but, if error, it did no injury to the defendants. Had this point been material and more fully considered, the instruction as to the effect of one judgment might have been different." It is entirely unnecessary, therefore, in the view which we have taken of the case, to consider the question, which was the principal if not only one discussed before us, whether the plaintiffs below, on the evidence, if believed by the jury, were parties or privies to the action in the Circuit Court of the United States.

As to the assignment of error that the court erred in answering in the negative the defendants' sixth point, which was in substance that the plaintiffs could not recover in this form of action unless they had shown to the satisfaction of the jury that they were in actual possession of the premises upon which the disturbance was alleged to have occurred, no authority has been cited in support of it, and it is apprehended that none can be found. On the contrary, it is very clear, from the nature of the case, that possession of the land is not necessary to enable the owner of an incorporeal hereditament to recover damages in this, which is the only form of action to which he can resort. In general he has no right to the possession of any part of the land. The grantee of a rent has no right to such possession, yet, if he is obstructed and prevented from his distress, which is the mode by which he can enjoy or enforce his right if denied, he surely can maintain his action. The grantee

[Union Petroleum Co. *v.* Bliven Petroleum Co.]

of a way over another man's land has indeed a *pedis possesssio* while in the actual use of it, but no one has ever supposed that it was necessary that he should be actually walking over the land when the way is stopped up or obstructed, or another who has no right in common with him uses it unlawfully to his injury. In grants of the right to bore for oil there is indeed usually, as in this case, a right to the possession of so much of the land as is necessary for the exercise of the privilege, but that, like the right of ingress and egress, is but an incident of the incorporeal hereditament. Possession of that might no doubt be gained or lost by ejectment, or enforced by trespass *quare clausum fregit.* To the latter action actual or constructive possession is necessary in the plaintiff, but never to an action of trespass in the case, as in the common instance of a reversioner suing for a permanent injury to the freehold.

The court below we think were right in not allowing the affidavits and depositions attached to the record of the judgment in the Circuit Court to go out with the jury.

Judgment affirmed.