## Commonwealth ex rel., Appellants, *v.* Connellsville Borough.

*Deed—Dedication to public use—Plat—Public square.*

Where the words " public square " are used on a plat, this is an unrestricted dedication to public use, and the use varies according to circumstances to be judged of and directed by the proper local authorities subject to the control of the laws and the courts.

Where land in a town has been dedicated as " public ground " " for the use of the inhabitants of the said town and for travelers who may erect thereon temporary boat-yards," and it appears that the use of the land by travelers has ceased in fact, the town may use a small portion of the land as a site for a town hall, and lay out the remainder of it as a park and improve and ornament it as such.

Argued Oct. 24, 1901.   Appeal, No. 275, Jan. T., 1901, by plaintiffs, from decree of C. P. Fayette Co., No. 346, in equity, dissolving preliminary injunction in case of Commonwealth ex rel. Attorney General, Porter S. Newmyer, and Mary D., his wife, and others, v. The Burgess and Town Council of Connellsville.   Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ.   Affirmed.

Bill in equity for an injunction.

Motion to dissolve preliminary injunction.

Umbel, J., found the facts to be as follows:

1. That Zachariah Connell was the patentee and owner in fee simple of a large tract of land south of Mounts' creek and on the east side of the Youghiogheny river, in Fayette county, and on a part thereof laid out a town to be, and thereafter, known as Connellsville.

2. That a dedication in the nature of a charter was duly executed and acknowledged by the said Connell on March 21, 1793, and recorded, together with a plot of the said town as laid out, in the recorder's office of Fayette county, January 6, 1800, in deed book " C," page 339, since when the said grant and plot, with the streets, alleys, public ground and privileges therein mentioned have been accepted and recognized as the original charter of the said borough, and that the said dedication contains no provisions regarding a forfeiture or re-

verter to the grantor or his heirs in the event of nonuser or misuser.

3. That the said Connell by the said charter dedicated and appropriated the streets, alleys and public ground as indicated on the plot in the words following, viz: " The said Zachariah Connell for himself, his heirs and assigns, doth grant that the said streets and alleys of said town shall forever continue as they are now laid out and regulated by the plan aforesaid, . . . . and that the space left opposite the ferry and fronting on said river, as represented in the plan and distinguished by public ground, and Water street, shall be and continue free for the use of the inhabitants of said town and for travelers who may erect thereon temporary boat yards, or may from time to time occupy the same or any part thereof for making any vessels and other conveniences for the purpose of conveying their property to or from said town, and the said Zachariah Connell doth further promise and covenant with the inhabitants of said town and others who may choose to frequent the same, that all landings, harbors and other conveniences and advantages of said river opposite said town or adjoining Water street, aforesaid, shall be free to them at all times for the purpose of landing timber, stone or other materials for buildings, or for the use of landing vessels for removal of their persons or property to any place whatsoever."

4. That the said town and the inhabitants thereof, as well as strangers and travelers there sojourning, are provided with traveling and shipping facilities not dreamed of by Zachariah Connell at the date of the aforesaid dedication, and the futility of considering the probability of travelers erecting on said public ground temporary boat yards for making vessels and other conveniences for the purpose of conveying their property to and from said town appears when it is stated that they have three trunk line railroads at their service for such and other purposes, enabling them to complete their shipments in less time than it would require to build a boat and at an expense less than the cost thereof, not counting the danger, loss of time, the limited territory incident to such mode of travel, nor the fact that a large portion of the time such shipments would be impossible on account of scarcity of water in the river. Such use has not been made of the said public ground within the

recollection of the oldest inhabitant, nor is it likely ever to be so used. Owing to the construction and operation of the Pittsburg and Connellsville Railroad with its several tracks between this public ground and the river and scarcity of water as aforesaid, it is not now practicable and hardly possible to so use it, and considering the condition in which said public ground has been kept and the uses made of it for many years past, it is an unsightly place if not a veritable nuisance to the public, and especially to the town and people of Connellsville. We are therefore of opinion and find as a fact that the use "for travelers who may erect thereon temporary boat yards," etc., has ceased to exist.

5. That said public ground adjoins land of Mrs. Mary D. Newmyer 150 feet on the north, 240 feet on Hill alley or Arch street on the east, fronting 150 feet on Main street on the south and 240 feet on Water street on the west; said borough proposes to erect on the eastern side of said public ·ground a permanent substantial structure to be used for general municipal purposes, forty-five by sixty feet, three stories high, fronting on Arch street on a line parallel therewith and twenty feet therefrom, the southeast corner of which building is intended to be located sixty feet north of said Main street; of which the orators complain because such building would be injurious to the desirability and market value of their property and because such would be foreign to the purposes, aims and efforts of said Connell in granting the said land and franchises to the public.

6. Instead of injuring the desirability and market value of their property, we are of opinion that such structure as indicated by the plans submitted will be of advantage and enhance the value of the near and adjoining properties, especially so, considering the condition in which said ground has been kept and the condition in which it should be kept, around such building, and in which the borough proposes to keep it after the erection thereof. The other objection being of a legal character, is disposed of hereafter.

The court entered a decree dissolving a preliminary injunction.

*Error assigned* was the decree of the court.

*Edward Campbell*, for appellants.—The town council of Con-

nellsville have no right upon no higher authority than their own mere resolution, to take possession of and build a town hall upon the Connellsville public square: Mahon v. Luzerne County, 197 Pa. 17 ; Rung v. Shoneberger, 2 Watts, 23 ; Com. v. Moorehead, 118 Pa. 354; Com. v. McDonald, 16 S. & R. 389 ; Com. v. Rush, 14 Pa. 186 ; Penny Pot Landing v. Phila., 16 Pa. 79; French v. Quincy, 3 Allen (Mass.), 9; Franklin County Comrs. v. Lathrop, 9 Kans. 453; Hennepin County Commrs. v. Dayton, 17 Minn. 260; Com. v. Rush, 14 Pa. 186; Com. v. Bowman, 3 Pa. 202 ; Alton v. Ill. Transportation Co., 12 Ill. 38; Weeping Water v. Reed, 21 Neb. 261; 31 N. W. Repr. 797; Langley v. Gallipolis, 2 Ohio, 107; Baker v. Johnston, 21 Mich. 319 ; Baird v. Rice, 63 Pa. 489 ; Riggs v. Detroit Board of Education, 27 Mich. 262.

The doctrine of dedication to public uses has been extended and applied to public squares in cities and villages, these being regarded as easements for the benefit of the public; and the fact of dedication may be established in the same manner as in the case of highways and streets: Commonwealth v. Rush, 14 Pa. 186 ; State v. Wilkinson, 2 Vt. 186; Abbott v. Cottage City (Public Square), 143 Mass. 521, 10 N. E. Repr. 325; Abbott v. Mills, 3 Vt. 521; State v. Catlin, 3 Vt. 530 ; State v. Trask, 6 Vt. 355 ; Watertown v. Cowen, 4 Paige Ch. (N. Y.) 510 ; Huber v. Gazley, 18 Ohio, 18; LeClercq v. Gallipolis Trs., 7 Ohio, Pt. 1, 218; Pearsall v. Post, 20 Wend. 111, 117; s. c., 22 Wend. 425, 433, 451, 454; Winona v. Huff, 11 Minn. 119 ; Doe v. Attica, 7 Ind. 641; Smith v. Heuston, 6 Ohio, 101; Brown v. Manning, 6 Ohio, 298; Dover v. Fox, 9 Ben. Monroe (Ky.), 200 ; Baker v. Johnson, 21 Mich. 319; Daniels v. Wilson, 27 Wis. 492.

The owner of land fronting on a common or public park participates with the public in a beneficial interest therein, and may maintain injunction to protect his interest: Wheeler v. Bedford, 54 Conn. 244; 7 Atl. Rep. 22 ; Birmingham v. Anderson, 48 Pa. 253.

*D. W. McDonald,* with him *J. R. Cray, B. F. Sterling, E. C. Higbee* and *J. R. Dumbauld,* for appellee.—The intention of Mr. Connell was evidently to set apart the land in question for the use of the inhabitants of the town and also for the purpose

of building boats by travelers, and when that use ceased to exist, and it was no longer possible to use it for that purpose the only limitation placed on the grant of the land is found in the words " free for the use of the inhabitants of the said town." The only effect of these words is to perhaps limit the use more particularly to the people of Connellsville and to exclude some rights that the public outside of Connellsville might have therein if the dedication had been made by plot alone, but taken in its most strict sense and most favorably for the contention of the appellants, this charter amounts to no more than the dedication of the land generally for public purposes : Com. v. Beaver Borough, 171 Pa. 542.

OPINION BY MR. JUSTICE MITCHELL, January 6, 1902 :

The owner of the site in laying out the town of Connellsville, designated the land now in controversy as " public ground " in the following terms, " The space left opposite the ferry and fronting on said river as represented in the plan and distinguished by public ground and Water street, shall be and continue free for the use of the inhabitants of the said town and for travelers who may erect thereon temporary boat yards, or may from time to time occupy the same or any part thereof for making any vessels and other conveniences for the purpose of conveying their property to and from said town."

It is undisputed that this was an irrevocable dedication to public use, and that the private complainants as purchasers of lots fronting on this public ground have a special interest in the use to which it may be put, in addition to the interest of the general public represented by the attorney general. The question in the case therefore is the nature of the use implied in the grant.

The general rule is thus stated by Dillon, largely from the Pennsylvania cases, "where the words 'public square' are used on a plat, this is an unrestricted dedication to public use, and the use varies according to circumstances to be judged of and directed by the proper local authorities subject to the control of the laws and the courts : " 2 Dillon on Municipal Corporations, (ed. 1890,) sec. 645. The ordinary and most frequent uses as enumerated by Justice ROGERS in Rung v. Shoneberger, 2 Watts, 23, are as "sites for the erection of buildings for

the use of the public, such as courthouses, market houses, schoolhouses, and churches; sometimes they are designed as ornaments and at others for the promotion of the health of the inhabitants by admitting a free circulation of air." To these might be added, especially in the earlier dedications, commons for pasture, public pounds for stray animals, even under some conditions, common dumping grounds, or as in the present case common landing places for those using the river. All or any of these uses would come within the general purview of a dedication as "public ground," and would be such as "under usage and custom would be deemed to have been fairly in contemplation at the time of so laying out and selling lots in the plan:" Com. v. Beaver Boro., 171 Pa. 542, 557. As population increased and the habits and occupations of the people changed, one or more of these uses might decline or cease, or on the other hand become more prominent and to some extent displace the others. The recognition and provision for such changes are matters for the local authorities. In Com. v. Beaver, supra, the borough council in order to avoid sacrifice of a line of trees planted by citizens for shade or ornament made a change in the use of the public square, by devoting part of it to a roadway for driving. It was held to be within their discretion. "The council can regulate, care for and improve the public squares . . . . in any way not inconsistent with the proper public use:" Com. v. Beaver Boro., supra., p. 559.

In the present case the dedication is in the most general terms as "public ground." It is not required to be left an open space, as in some of the cases, nor is there any restriction against any use fairly to be called public, except so far as may be inferred from the particular use specified in the grant to travelers for temporary boat yards, etc. Whether this could be entirely taken away we need not consider. The court below has found that such use has ceased in fact, and there is no one here complaining in the character of a traveler deprived of his privileges in that regard. Even if there were, it would hardly seem that he could complain of an encroachment that only proposes to occupy one thirteenth of the lot. From the photographs submitted and statements made at the argument, it appears that as the river transportation and business declined, this ground became neglected and for a long time past

has been used practically only as a dumping ground. It was clearly within the discretion of the council to lay it out as a park, and improve and ornament it as such. That is the public use which appellants claim should be made of it. But public buildings are equally within the purpose of the dedication, and in fact are the most prominent use to which such grounds are commonly devoted and upon which the question has most frequently come before the courts. See Mahon v. Luzerne County, 197 Pa. 17. The adaptation and use of the ground for one or more public purposes, and its regulation accordingly are within the discretion of the public authorities so long as they do not transgress the terms or limitations of the original grant. Whether a preference given by such authorities to one or more of several permissible uses, is reasonable or not must be determined in each case, by its own circumstances. The ground proposed to be occupied by a permanent building in the present case is only one thirteenth of the whole lot, and the rest is to be improved and made a credit to the city. This is not only within the discretion of the council, but was found by the learned judge below to be a wise exercise of it.

Decree affirmed with costs.