Bruker, Appellant, *v.* Carlisle Borough.

Argued November 17, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*John D. Faller, Jr.,* with him *James D. Flower,* for appellants.

*Tom H. Bietsch,* with him *Harold S. Irwin* and *Joseph L. Kramer,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, January 13, 1954:

The town of Carlisle was laid out in 1751 according to a plan of Thomas Penn, then Proprietor of Pennsylvania. In a letter to Richard Peters, Secretary of the Province, he wrote that in the center of Carlisle he would have a Square and that "the Court House may be in the middle of one side and the Gaal in any place near, there may be a places I think in the middle of the Center Square for a Market, or if that will take off too much of the lots, a lot may be given at the rent of a Shilling as for the other publick uses for that purpose, . . ." A public market occupied a portion of the southeast quarter of the Square as early as 1764, and from time to time thereafter new market houses were erected on the same site and mar-

kets were regularly conducted there. The last of such structures was erected in 1878; it contained the Council Chamber and some Borough offices on the second floor, and later there were installed on the first floor a police headquarters, a lock-up, and two restaurants. In the latter part of 1951 by resolution of the Burgess and Town Council the market house, together with some of the adjoining sidewalk areas and surrounding streets and alleys, were closed to the public and further market activities prevented. Subsequently, by order of the Council, the market house was demolished and it is allegedly the Council's intention to abandon entirely the use of the southeast quarter of the Square as a market place and to erect a structure on the site for some other public purpose.

An action to quiet title was instituted by the present plaintiffs, who are citizens and taxpayers and for many years have been vendors of farm or bakery products in the market; another plaintiff has long been a customer there. In their complaint they prayed for a decree adjudicating the title to the southeast quarter of the Square to be in the Commonwealth of Pennsylvania for the use of the general public for market purposes. Defendants filed preliminary objections, challenging both the form of the action and the sufficiency of the complaint to set forth a cause of action. The court sustained the objection to the form of action, and, in effect, dismissed the complaint. From its order plaintiffs now appeal.

The action at law to quiet title has its origin in Pa. R. C. P. 1061, which specifies four purposes for which it may be brought. Of these only one is here material, namely, "where an action of ejectment will not lie, to determine any right, lien, title or interest in the land. . . ." It would seem quite clear that it was intended to be extremely broad in scope and to

replace not only proceedings in equity by bill quia timet * but also various statutory legal proceedings. In Goodrich-Amram, §1061(b)-1, it is said that "The action to quiet title is a new form of action, created as a consolidation of a large number of independent actions and proceedings, mostly statutory, designed to remove clouds on title, [and] to adjudicate title disputes where ejectment will not lie. . . ." And further, §1061(b)-3: "The proceedings [under such action] are designed to cure deficiencies which cannot be reached through any form of direct or indirect ejectment."

There is much controversy between the parties as to the nature of the interest asserted by plaintiffs and whether it is sufficient to enable them to bring this action. It is plaintiffs' contention that not only those who enjoyed the right to sell their produce in the market, but the public generally, possess an easement or servitude in respect to the land in the nature of an incorporeal hereditament,—a right to its use as a market place. Be that as it may, if, as plaintiffs claim, it were true that the southeast quarter of the Square was dedicated for public use as a market, they would undoubtedly not only have an interest to enforce the continuance of that use, but one special and peculiar to themselves additional to that of the public generally, and, whatever the technical designation that might be applied to it, it would clearly constitute a "right" or "interest in the land" within the purview of those terms as employed in Rule 1061(b) 2. It is true that ordinarily, where the defendant is in possession and the plaintiff out of possession of the land the latter must bring an action in ejectment (*Buck*

---

* In *Kalyvas v. Kalyvas*, 371 Pa. 371, 89 A. 2d 319, it was said (p. 372, A. p. 820) "Although the action [under Pa. R. C. P. 1061] is an action at law it embraces all the equitable jurisdiction which was formerly exercisable under a bill quia timet."

*v. Brunner,* 167 Pa. Superior Ct. 142, 74 A. 2d 528; *Versailles Township Authority v. McKeesport,* 171 Pa. Superior Ct. 377, 382, 90 A. 2d 581, 583). For an interest, however, of the nature here involved, which does not confer the right to exclusive possession, an action of ejectment will not lie: *Union Petroleum Co. v. Bliven Petroleum Co.,* 72 Pa. 173, 181; *Kelly v. Keys,* 213 Pa. 295, 62 A. 911; *Bell Telephone Co. of Pennsylvania v. Baltimore & Ohio R. R. Co.,* 155 Pa. Superior Ct. 286, 288, 38 A. 2d 732, 733; *Versailles Township Authority v. McKeesport,* 171 Pa. Superior Ct. 377, 383, 90 A. 2d 581, 583. Therefore, to enforce such an interest, resort may properly be had to Rule 1061: *Versailles Township Authority v. McKeesport,* 171 Pa. Superior Ct. 377, 383, 90 A. 2d 581, 584. (Cf. *Union Petroleum Co. v. Bliven Petroleum Co.,* 72 Pa. 173, 182, 183).

We conclude, therefore, that the form of action here employed was permissible, and we might add that, even were it otherwise, courts have the power in any stage of the proceedings to permit a change in the form of action if the same be necessary for a proper decision of the cause upon its merits: Act of May 10, 1871, P. L. 265; *Taylor v. Kaufhold,* 368 Pa. 538, 544, 545, 84 A. 2d 347, 351; Pa. R. C. P. 1033.

We proceed to a consideration of the substantive merits of plaintiffs' claim. They contend that there was a common-law dedication of the Center Square for public use by virtue of the letter from Thomas Penn to Richard Peters previously referred to and subsequent correspondence between Penn and James Hamilton, then Governor of the Province. Concerning the use of the southeast quarter as a market, while admitting that no patent, deed, or other instrument in the nature thereof was ever executed by the Proprietors or the Commonwealth of Pennsylvania, they point

pears that no specific uses of the Square have been invariably followed; thus, a town hall and fire house was erected about 1820 in the southwest quarter and was used for municipal purposes until destroyed by fire in 1845, and, as already stated, the Council Chamber and certain Borough offices were installed in the market house erected in 1878. We must conclude, therefore, that, while undoubtedly this Center Square cannot be used for other than public purposes, any particular uses within that limitation were neither commanded nor restricted by Thomas Penn or by any statutory dedication, and the practice during the years has shown itself to be in accord with that conclusion.

Whenever property is dedicated in merely general terms to public use such use necessarily varies with the changing circumstances, customs and requirements of city life, and is therefore subject from time to time to determination by the proper legal authorities, subject, of course, to ultimate judicial control as to legality: *Commonwealth v. Alburger,* 1 Wh. 468, 485, 486; *Commonwealth v. Connellsville Borough,* 201 Pa. 154, 158-160, 50 A. 825, 826; *Wentz v. Philadelphia,* 301 Pa. 261, 271, 151 A. 883, 887. And the fact that in the present case the southeast quarter of Center Square has actually been used for market purposes for so many years does not impair the right of the public authorities to use the land for any other public purpose, since public rights cannot be destroyed by adverse user, prescription, or lapse of time: *Commonwealth v. Alburger,* 1 Wh. 468, 486; *Commonwealth v. McDonald,* 16 S. & R. 390, 401; *Penny Pot Landing,* 16 Pa. 79, 94; *City of Philadelphia v. Philadelphia & Reading R. R. Co.,* 58 Pa. 253, 263; *Commonwealth v. Moorehead,* 118 Pa. 344, 354, 12 A. 424, 426; *Wakeling v. Cocker,* 23 Pa. Superior Ct. 196.

The order dismissing the complaint is affirmed.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

I agree with all of the legal principles which the Chief Justice has so ably restated and expounded, but I disagree with the application of one of these principles to the facts of this case.

Evidence of dedications and titles based upon ancient documents or events arising out of antiquity cannot possibly be as strong or clear as would be required in matters arising or titles created in modern times; and we must not lightly strike down rights or public uses which have existed for more than a century: *Hostetter v. Commonwealth*, 367 Pa. 603, 606, 80 A. 2d 719.

Counsel for the Borough frankly admits that if the Borough can change or destroy this market place it can also change or destroy the church which was built on this same public square and like the market place has been used for more than 200 years. This church and this market place were dedicated by Thomas Penn in 1751; and this dedication and use as a market place were thereafter frequently ratified. The Borough merely contends that there exists today no clear evidence that this square was the "spot" which was dedicated for these purposes.

We are living in exciting and rapidly changing times. We rode from the horse and buggy age to the automobile age and then flew too rapidly to the airplane age and the atomic age. The tremendous changes which have occurred and are still daily occurring have necessarily produced uncertainty, unrest and confusion—not only in the minds of men, but in many phases of man's life. As a consequence, "change" is