# Kelly v. Keys, Appellant.

*Oil and gas lease—Title to mineral—Possession—Ejectment.*

The grant of exclusive privileges to go on land for the purpose of prospecting for oil, the grantor to receive part of the oil mined, does not vest in the grantee any estate in the land or oil, but is merely a license or grant of an incorporeal hereditament; and the grantee, if he has never been in possession cannot maintain an action of ejectment against the grantor, or those claiming under him by a subsequent grant, although at the time of the ejectment oil was being produced in paying quantities.

The grant of an exclusive right to mine for and produce oil, though it be a mineral, is not a sale of the oil that may afterwards be discovered. When under such a grant oil has been discovered, it is the grantee's right to produce it and sever it from the soil; so much as is thus severed, belongs to the parties entitled under the terms of the grant, not as any part of the real estate, however, but as a chattel, and only so much as is produced and severed passes under the grant: as to all not produced there is no change of property.

Argued Oct. 21, 1905. Appeal, No. 164, Oct. T., 1905, by defendant, from judgment of C. P. Washington Co., Nov. T., 1904, No. 128, on verdict for plaintiff in case of W. C. Kelly v. A. M. Keys, C. D. Greenlee, and the Southern Oil Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Ejectment for oil in land in Smith township. Before TAYLOR, J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in entering judgment on the verdict and in refusing judgment for defendant non obstante veredicto.

*Eugene Mackey* and *R. W. Irwin*, with them *Isaac Baum*, *James W. Lee*, *Cornelius D. Scully* and *Ralph R. Lee*, for appellants.—The plaintiff, a lessee under a so-called "oil lease" who has never been ousted from, or in possession of, the land in question cannot maintain this action of ejectment against the landowner and his privies : Funk v. Haldeman, 53 Pa. 229 ; Rynd v. Rynd Farm Oil Co., 63 Pa. 397 ; Union Petroleum Co. v. Bliven Petroleum Co., 72 Pa. 173 ; Dark v. Johnston, 55 Pa. 164; Hicks v. American Nat. Gas Co., 207 Pa. 570 ; McNish v. Stone, 152 Pa. 457.

The right granted to the plaintiff, Kelly, by the defendant, landowner Keys, being a mere incorporeal hereditament, and Kelly never having taken possession of the land in dispute under his said right, and what is more to the point, having never been ousted therefrom, it is clear from the authorities that he cannot maintain an action of ejectment to secure such possession : Clement v. Youngman, 40 Pa. 341 ; Carnahan v. Brown, 60 Pa. 23 ; Dark v. Johnston, 55 Pa. 164 ; Union Petroleum Co. v. Bliven Petroleum Co., 72 Pa. 173; Hicks v. American Natural Gas Co., 207 Pa. 570.

*Samuel Amspoker*, with him *John M. Buchanan* and *Arthur E. Barnett*, for appellee.—An agreement to lease land for a term of years, with the exclusive right to bore for and collect oil, giving one-fourth to the lessor, passes a corporeal interest: Chicago, etc., Oil Co. v. U. S. Petroleum Co., 57 Pa. 83.

The lease in such case is not a grant of property in the oil, but is a grant of possession for the purpose of searching for and procuring oil, and such lease partakes of the character of a lease for general tillage, rather than of a lease for mining or quarrying the solid minerals: Barnhart v. Lockwood, 152 Pa. 82; Wettengel v. Gormley, 160 Pa. 559.

OPINION BY MR. JUSTICE STEWART, January 2, 1906 :

The defendant, Keys, being the owner of a certain tract of land in Washington county, by instrument in writing duly executed and acknowledged, granted to Kelly, the plaintiff, the exclusive right to mine and produce therefrom petroleum and natural gas, with possession of so much of the land as might be necessary for such purposes, for a term of two years, subject

to certain conditions and stipulations which do not here call for recital. Kelly never exercised any rights under the grant, and never entered into possession of any part of the premises. Subsequently, Keys, claiming that by reason of a default, Kelly had forfeited his rights under the grant, conveyed a like right in the premises to C. D. Greenlee and the Southern Oil Company, the other defendants, who proceeded to explore the property and succeeded in producing oil therefrom in paying quantity.

Kelly, averring compliance on his part with all the conditions and stipulations of the grant under which he claimed, and denying a forfeiture, brought this action of ejectment against the defendants to compel surrender of possession to himself. The action resulted in a verdict for the plaintiff, subject to the decision of the court on a question reserved, viz.: whether ejectment in such case would lie. Upon consideration judgment was rendered upon the reserved point in favor of the plaintiff. The assignment of error that relates to the action of the court on this point, is the only one that calls for present consideration.

In reaching his conclusion on the point reserved, the learned judge gave full recognition to the binding authority of Funk v. Haldeman, 53 Pa. 229, and the cases that follow it, wherein it is held that the grant of exclusive privileges to go on land for the purpose of prospecting for oil, the grantor to receive part of the oil mined, as in this case, does not vest in the grantee any estate in the land or oil, but is merely a license or grant of an incorporeal hereditament.

This court has found frequent occasion to assert its continued adherence to the doctrine of these cases. Only recently, in the case of Hicks v. American Natural Gas Company, 207 Pa. 570, it reasserted it without qualification. Once it was determined that the subject of such a grant was an incorporeal hereditament, and not an estate in the land or oil, it logically and necessarily resulted, that it would not support an action in ejectment. And this view has been steadily adhered to. In no case has ejectment been sustained under such a grant, except where possession had been acquired by the grantee, and he had been wrongfully disseised. In the present case disseizin was not, and could not be, asserted. Nor could it be contended,

that the instrument under which Kelly claimed, though spoken of as a lease, and so denominated in the instrument itself, is in point of fact and law, a lease, notwithstanding it allows possession of so much of the surface of the premises as may be necessary to conduct mining operations. This much will be implied without express stipulation; and the stipulation being expressed in no way distinguishes this from the cases where such an instrument is held to be merely a grant or license. The court below put no other construction on this, so long as it concerned no one but grantor or grantee; but because the defendants holding under a subsequent lease, being in possession, had produced and were producing oil in paying quantity, reached the conclusion that what had been the grant of an incorporeal hereditament, now that the oil had been found and was being produced, was an estate in the land, since oil was a mineral, and therefore part of the land; and that Kelly being entitled to be put in possession of so much of the estate, ejectment could be brought for such purpose.

This line of argument overlooks the very consideration on which the authorities cited rest. In no case is it held that the grant of an exclusive right to mine for and produce oil, though it be a mineral, is a sale of the oil that may afterward be discovered. When under such a grant oil has been discovered, it is the grantee's right to produce it and sever it from the soil; so much as is thus severed, belongs to the parties entitled under the terms of the grant, not as any part of the real estate, however, but as a chattel, and only so much as is produced and severed passes under the grant: as to all not produced there is no change of property. It is expressly so ruled in Funk v. Haldeman, 53 Pa. 229; and the same ruling was repeated and emphasized in the case next following on the same subject, Dark v. Johnston, 55 Pa. 164. These were the first cases in which grants of rights to explore for oil were considered and passed upon by this court. The rulings therein have been steadily and consistently followed. In this connection it is only necessary to refer to the case of Union Petroleum Company v. Bliven Petroleum Co., 72 Pa. 173, where the grant was the same as in the present case, with the additional fact that there as here, oil had actually been discovered and was being produced, and Barnhart v. Lockwood, 152 Pa. 82.

The reason for the rule thus established, is to be found in the peculiar character of mineral oil. This is very clearly indicated in the earlier cases, where the distinction is drawn between minerals which are fugacious in their nature, such as water, gas and oil, and those which have a fixed situs and are necessarily part of the land; and this distinction has been allowed with controlling significance whenever oil in situ has been the subject of the dispute. Both rule and reason are against the theory that prevailed with the court below, to the effect that the mineral once discovered, all that was in situ became in law part of the real estate.

With the rights of the appellee thus defined and limited by the cases cited above, it is manifest, without discussion, that he is in no position to maintain ejectment for the property. The question reserved was to this very point, and was raised in the first point submitted by the defendant, denying plaintiff's right to ejectment. The latter should have been affirmed. Its refusal is the subject of the eighth assignment of error, which must be sustained. It is unnecessary to consider the other assignments of error.

Judgment reversed, and judgment is directed to be entered on the point reserved in favor of defendant, non obstante veredicto.

---

# Mankey, Appellant, *v.* Stocking.

*Insolvency—Bond—Capias—Estoppel—Acts of June* 16, 1836, *P. L.* 729, *and June* 4, 1901, *P. L.* 404.

Where a capias ad satisfaciendum is issued on a judgment for slander, and the defendant with the knowledge and consent of the plaintiff's counsel enters the bond as provided by the Act of June 16, 1836, P. L. 729, to take the benefit of the insolvency laws, and not the bond as provided by the Act of June 4, 1901, P. L. 404, and subsequently takes the benefits of the act of 1836 by proceedings in court in the presence of, and without the objection of plaintiff's counsel, the plaintiff cannot thereafter maintain a suit against the surety on the bond on the ground that the act of 1901 had repealed the act of 1836, and that the proceedings in court were wholly null and void. If such proceedings were void the bond also was void, and no suit could be maintained upon it.

Argued Oct. 21, 1905.   Appeal, No. 191, Oct. T., 1905, by plaintiff, from order of C. P. Washington Co., Feb. T., 1905, No. 101, refusing rule for judgment for want of a sufficient affidavit of defense in case of Grace Mankey v. H. L. Stocking and James S. Stocking.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Assumpsit on a bond.

Rule for judgment for want of a sufficient affidavit of defense.

McILVAINE, P. J., filed the following opinion :

On January 24, 1904, the plaintiff in this case in an action of slander in this court obtained a judgment for $6,200 against H. L. Stocking.

On June 28, 1904, the said H. L. Stocking having been arrested on a capias ad satisfaciendum issued on this judgment secured his temporary release by giving to Grace Mankey, the plaintiff, a bond in the sum of $10,000 with James S. Stocking as surety.   This bond was approved by the prothonotary and filed to the number and term to which the writ of capias ad satisfaciendum was docketed.   After its approval the prothonotary gave the sheriff a written notice to discharge the defendant, " as he has filed a bond sec. leg."   The condition of this bond was " that if the said H. L. Stocking shall appear at the next term of the court of common pleas of said county and then and there present his petition for the benefit of the insolvent laws of this commonwealth and comply with all the requirements of said law and abide all the orders of the said court in that behalf, or in default thereof and if he fail in obtaining his discharge as an insolvent debtor he shall surrender himself to the jail of the said county, then this obligation to be void, otherwise of force."

" The insolvent laws of the commonwealth" at the date of the execution of this bond were found either in the enactments of an Act of assembly approved June 16, 1836, P. L. 729, or in an Act of assembly approved June 4, 1901, P. L. 404.   The act of June 4, 1901, in sec. 42 provides, among other things, for the repeal of the Act of June 16, 1836, P. L. 729 (except secs. 42, 43, 44 and 45, none of which related to the matter now before this court).   The Congress of the United States in the

year 1898 enacted a bankrupt law in which provision for the discharge of insolvents is made, and it is still in force.

By reason of the doubt existing as to whether the act of 1901 would become operative so long as the national bankrupt law of 1898 remained on the statute books (see Potts v. Smith Mfg. Co., 25 Pa. Superior Ct. 206), the defendant, H. L. Stocking, evidently gave a bond under and containing the conditions provided for in the act of 1836, and this must have been done with the knowledge and consent of the plaintiff's attorney who objected to a previous bond offered because not given to the plaintiff as provided in the act of 1836. H. L. Stocking in giving a bond and in attempting to comply with the conditions of this bond, to wit: " that he should appear at the next term of the court of common pleas of said county and then and there present his petition for the benefit of 'the insolvent laws of the commonwealth,'" had necessarily to determine before he acted what then were "the insolvent laws of the commonwealth," and the form of the bond agreed upon after consultation with the plaintiff's counsel clearly indicates that the parties treated the act of 1901 as inoperative, for if they had thought it was operative then they would have treated the act of 1836 as having been repealed and the form of the bond would have been different and it would have been given under the direction of the court as is provided for by the fifth section of the act of 1901.

H. L. Stocking, in accordance with the expressed condition of his bond, appeared at the next term of the court of common pleas (August term) and on August 15 (the first day of the term) presented his petition praying for the benefit of the insolvent laws of the commonwealth as provided in the act of 1836. The court adjudging the petition to be in proper form entertained jurisdiction of its subject-matter (evidently under the act of 1836) and made the following order: " And now, August 15, 1904, the within petition presented in open court and directed to be filed, and Monday, September 19, next, at ten o'clock fixed as the time for hearing the same in open court, fifteen days' notice of the time and place of hearing to be given by the petitioner to his creditors." Notice of this hearing was given Grace Mankey by handing to her attorney,—who had issued the capias and who had objected to the first bond and had

required another bond,—a copy of this order of the court.  On September 19, 1904, none of the creditors of H. L. Stocking (all of whom had been served with notice) entered an appearance, and on September 20, 1904, on motion of the attorney of H. L. Stocking made in open court, the court, after asking if there was any one present who objected, made the following order on the said H. L. Stocking's petition : " And now, September 20, 1904, this case came on for further hearing and thereupon it is ordered and decreed that the said H. L. Stocking is hereby discharged from further liability for or on account of the capias issued at No. ——— term, 1904.  That the said H. L. Stocking shall not at any time hereafter be liable to imprisonment by reason of any judgment or decree obtained for the payment of money contracted, accrued or occasioned and due before the date of this order."  The attorney for the writ of capias was present when this order was made and offered no objection to its being made, neither did he appear nor in any way express his consent to such an order being made.  It can be fairly inferred from the suit that was afterwards brought on the bond and the statement that has been filed, that he was silent because he was willing for the defendant in the capias to bring about conditions, as he thought, that would forfeit the bond of the defendant, which would be more benefit to his client than to prevent his discharge and secure his surrender to the custody of the sheriff again.

On December 19, 1904, suit was brought by Grace Mankey on the bond given on June 28, 1904, and the statement filed by her attorneys avers that there has been a breach of the condition of the bond in that the said petition of H. L. Stocking presented to the court of common pleas and all proceedings thereon are absolutely null and void, and that the surety on said bond of the said H. L. Stocking is liable for the penal sum of said bond because the requisitions of the Act of assembly of June 4, 1901, P. L. 404, had not been complied with.

The surety on said bond appeared and filed an affidavit of defense and avers in substance, first, that H. L. Stocking was discharged by this court and that thereby the conditions of his bond were satisfied ; second, that the bond, if taken as given under the act of 1901, is void in toto as it contains conditions different than those required by that act; that it was taken for

the use of the plaintiff alone and not all of the defendant's
creditors and was not taken under the direction of the court;
third, that the act of 1901 was not in force when the bond was
given by reason of the existence of the national bankrupt act
of 1898.

The plaintiff now moves for judgment for want of a sufficient
affidavit of defense. The facts in this case are not disputed
and the whole defense can be summed up by saying that the
plaintiff's statement fails to show a good cause of action.

To our minds it is evident that the bond in this case was filed
under the provisions of the act of June 16, 1836, and as the
plaintiff's counsel wanted the bond taken in the name of the
plaintiff and not the commonwealth and made no suggestion
that the court ought to fix the security, he evidently acquiesced
in the filing of such a bond and the temporary discharge of the
defendant by order of the prothonotary. The first question
then that suggests itself is this : Can the plaintiff now claim
that all the steps taken by H. L. Stocking under that bond are
void because not in accordance with the provision of the act of
1901 and still the bond be good against the surety ? To make
the claim that all the proceedings taken by the defendant should
have been under the act of 1901, is the counsel not in danger
of being " hoisted by his own petard ? " If the act of 1836 as
to the manner that the insolvent is to proceed is no longer in
force, is it in force as to the form of the bond and the manner
in which it is to be given ? and if not, is not the bond given by
the defendant just as null and void as any other step that he
took in the proceeding to be relieved from imprisonment? It
cannot be pretented under all the facts of the case as they are
made to appear in the affidavit of claim and the affidavit of de-
fense that the bond given was " the security for his appearance,
surrender and compliance with the decrees of the court and the
requirements of the act of 1901 such as the court might deem
requisite." The court never saw the bond, it never deemed
$10,000 the required sum in which the bond should be given or
that James S. Stocking was a good and sufficient surety. We
are therefore of the opinion that the plaintiff cannot blow hot
and cold. If the proceedings taken by H. L. Stocking under
the act of 1836 to be relieved from arrest as an insolvent are
void because taken under that act and not under the act of

1901, then they are wholly void, which would include the giving of the bond as given, and if the bond is void then no recovery can be had on it. I know there is a class of cases which are authority for the contention than an obligor of a bond given in a proceeding of this kind cannot be relieved from his obligation because of a slight difference between the condition in his bond voluntarily given and that required by an act of assembly. or on account of some irregularity for which he is wholly responsible. But that is not the case at bar. The bond filed by H. L. Stocking now sued upon was taken in the name of the plaintiff, as provided in the act of 1836, at the suggestion of her counsel who objected to the first bond because it was taken in the name of the commonwealth, and the face of the bond itself and the circumstances under which it was given was notice to the counsel for the plaintiff that the bond was not the one required by the fifth section of the act of 1901; he knew or should have known that H. L. Stocking's counsel were acting under the act of 1836 and treating the act of 1901 as inoperative, and he at least passively acquiesced in the action taken by Stocking to obtain not only his temporary but his final discharge. In other words, the bond in question when given (and as understood by both the obligee and obligors) meant by the words, to wit:—" the insolvent laws of the commonwealth " and " with all the requisition of said laws,"—the act of 1836 and not the act of 1901. If then the defendant complied with the conditions of his bond by complying with " all the requisitions of the act of 1836 " and was discharged by the court as an insolvent debtor, how can the plaintiff aver a breach of the condition of the bond because he did not comply with the requisitions of the act of 1901 and say that what he did in complying with the conditions of the bond given under and to comply with the terms of the act of 1836 is " wholly null and void," without also saying that the bond which was given to compel him either to do what he did or pay $10,000 is also void ? The facts before us certainly make a very different case from those cited in the very exhaustive and able brief of the plaintiff's counsel to show that a bond given by an applicant for the benefits of the insolvent laws of the commonwealth is often held to be valid even though it may not strictly conform to the requirements of the law as to the manner of giving it or in its

conditions.    We are therefore of the opinion that if the act of 1836 was repealed and the act of 1901 was in force when the bond was given and " all proceedings thereon" taken by the court at the instance of the defendant in his endeavor to comply with the conditions of the bond " are absolutely null and void" then the said bond was also wholly null and void and the prothonotary's direction to the sheriff to discharge the defendant unauthorized because he had not " given a bond ' sec. leg.' " and the plaintiff's remedy was either against the Prothonotary for directing the discharge of the defendant until he had given a bond sec. leg. or to appear and resist the final discharge of the defendant and secure his surrender to the sheriff or to issue an alias capias ad satisfaciendum.

This brings us to the consideration of another question and that is the order of discharge made by the court on September 20, 1904.    It is certain that the court is given jurisdiction to discharge an insolvent debtor who may have been arrested on a capias ad satisfaciendum, and this is so under both the act of 1836 and the act of 1901; and it had jurisdiction to determine at the date of the hearing whether the act of 1901 was inoperative by reason of the national bankrupt act of Congress passed in 1898 and the act of 1836 still in force ; and although no opinion is filed it must be taken that the court duly considered all questions involved and after having done so found that the defendant had complied with the requirements necessary to entitle him to a discharge and thereupon discharged him. If the bond was valid and binding on the defendant, it certainly was the duty of the court on September 20, 1904, to determine whether he had so fully complied with the conditions thereof as to entitle him to a final discharge from imprisonment on the capias or whether his failure to comply with these conditions was such that he ought (to avoid paying the penalty of his bond) surrender himself to the custody of the sheriff to again meet the demands of the capias ad satisfaciendum.    The court said, " you have complied with the conditions of your bond ; you can go and you need not surrender yourself to the sheriff." The plaintiff now wants the penalty of the bond because the plaintiff did not surrender himself to the sheriff,—a thing the court in legal effect told him he need not do.

The plaintiff's counsel who issued the capias had full notice

that this decree would be asked for, was present in court when it was made and has never taken exceptions to the same nor an appeal therefrom.  If the decree was simply voidable or reversible, that fact can be adjudged only on appeal or certiorari and cannot be set up here.  If, on the other hand, the decree was wholly null and void and all the defendant did to secure his discharge from the grip of the capias was done without authority of law, and this case comes under the class of cases of which Tenan v. Kane, 188 Pa. 242, cited by counsel, and Insurance Co. v. Tenan, 204 Pa. 332, are examples, then as we have already said everything that the defendant did under the act of 1836 was wholly null and void, including the giving of the bond which he gave to the plaintiff, and the plaintiff cannot recover for the breach of a bond that is wholly void.  Suit on the bond under such circumstances would not be his remedy. It would be to take a new start and issue an alias capias.  In other words, if the plaintiff would issue an alias capias on this judgment and the defendant would set up the decree of September 20, 1904, as a bar against a second arrest, the plaintiff could reply that the bond and all proceedings thereon were wholly void (not voidable or reversible) and if the court found this to be so and made such a decree as was made in Ins. Co. v. Tenan, 204 Pa. 332, then the defendant would have to give a proper bond and pursue the proper proceeding de novo to be discharged.  In saying this we do not want to be taken as indicating that the court thinks the decree of September 20, 1904, wholly void.  We were simply assuming that what the plaintiff claims as to this decree under the authority of Tenan v. Kane was correct, and then suggesting the result on certain contingencies.  Our opinion, however, is that the decree of September 20, 1904, at most is only reversible by a higher court on appeal on account of error of judgment committed by the court below and not on account of such a total want of jurisdiction in the court below as would make its decree "void and of no legal effect," as was the judgment in the case of Tenan v. Cain, 188 Pa. 242, and Ins. Co. v. Tenan, 204 Pa. 332.

And now, July 12, 1905, rule for judgment for want of a sufficient affidavit of defense, discharged.

*Error assigned* was the order of the court.