## KOLACHNY v. GALBREATH *et al.*

No. 524.   Opinion Filed July 12, 1910.

(110 Pac. 902.)

1. **SPECIFIC PERFORMANCE—Oil and Gas Lease—Termination.**
G., the grantor of 'S., leased the land to K. (the plaintiff) for the purpose of drilling and operating for oil and gas. The lease provided that K. should have the right at any time to surrender and terminate said grant and demise by serving written notice upon G. of such intention, after which all payments or liabilities to accrue should cease and terminate. Thereafter, G. sold the land to S, who granted the oil and gas rights to other parties. **Held,** that the option to terminate the lease at any time deprived K., the plaintiff, of the right to specific performance directly or indirectly, until he had performed the contract or placed himself in such a position that he might be compelled to perform it on his part.

2. **CONTRACTS—Construction—Option.** When contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound.

3. **SPECIFIC PERFORMANCE—Oil and Gas Lease—Parties—Owner of Fee.** A subsequent purchaser of land is the proper party against whom to enforce an oil or gas lease or contract made with the prior owner of the fee.

4. **MINES AND MINERALS—Oil and Gas Lease—Ownership—Conveyance.** Oil and gas, while in the earth, unlike solid minerals, are not the subject of ownership distinct from the soil, and the grant of the oil and gas, therefore, is a grant, not of the oil that is in the ground, but of such a part as the grantee may find, and passes nothing that can be the subject of an ejectment or other real action.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County; John Caruthers, Judge.*

Action by John W. Kolachny against Robert Galbreath and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Robertson & Kean* and *Bailey & Kistler,* for plaintiff in error. —Citing: *Eldred et al. v. Okmulgee Loan & Trust Co.,* 22 Okla. 747; *Monfort v. Lanyon,* 67 Kan. 311; *Alleghany Oil Co. v. Snyder,* 106 Fed. 764, 45 C. C. A. 604; *Brick Co. v. Bailey,* 76 Kan. 42; *Dickey v. Brick Co.,* 69 Kan. 106; *Brown v. Fowler,* 63 N. E. 79; *Central Ohio Nat. Gas. Co. v. Eckert,* 71 N. E. 282; *Consumers Gas Trust Co. v. Worth,* 71 N. E. 489; *Detlos v. Holland,* 57 Ohio, 492; *McMillan v. Phila. Co.,* 28 Atl. 220; *Northwestern, etc., Co. v. Tiffin,* 54 iN. E. 77; *Mills v. Hartz,* 94 Pac. 142.

*Ramsey & Thomas,* for defendants in error.—Citing: Jones, Landlord & Ten. sec. 427; *Rease v. Kittle,* 49 S. E. 150; 3 Page, Cont. secs. 1616, 1640; *Frank v. Stratford-Hancock,* 77 Pac. 139; *Eclipse Oil Co. v. South Penn. Oil Co.,* 34 S. E. 923; *Maryland Tel. & Tel. Co. v. C. Simons Son's Co.,* 63 Atl. 315; *Taussig v. Corbin,* 142 Fed. 660; *Shubert v. Woodward,* 167 Fed. 47; *Meason v. Kaine,* 63 Pa. 335; *Tennessee Oil, Gas & Mineral Co. v. Brown et al.,* 131 Fed. 696; *Poe et al. v. Elrey,* 233 Ill. 56, 84 N. E. 46; *Watford Oil & Gas Co. v. Shipman,* 233 Ill. 9, 84 N. E. 53; *Federal Oil Co. v. Western Oil Co.,* 121 Fed. 373; *Brookyn Base Ball Club v. McGuire,* 116 Fed. 782; *Fowler Utilities Co. v. Gray,* 79 N. E. 897; *Huggins v. Daley,* 99 Fed. 606; *Chappel v. Kansas Vit. Brick Co.,* 70 Kan. 723, 79 Pac. 666; *Payne v. Newall,* 99 Pac. 476; Pomeroy on Cont. secs. 162, 163, 465; *Jenning-Heywood Oil S. Co. v. Houssiere L. Oil Company* (La.) 44 South. 501; *Chadwick v. Chadwick,* 121 Ala. 580; *Nick's Heirs et al. v. Rector,* 4 Ark. 279; *Jordon v. Deaton,* 23 Ark. 704; *Bodine v. Glading,* 21 Pa. St. 50; *De Cordova v. Smith,* 9 Tex. 129; *Moore's Administrators v. Fitz Randolph,* 29 Am. Dec. 208; *Wood v. Dickey,* 17 S. E. 818; *M., K. & T. Ry. Co. v. Bagley* (Kan.) 56 Pac. 759; Pomeroy Eq. Jur., vol. 4, sec. 1405; Waterman on Specific Performance of Contracts, sec. 196; *Iron Age Pub. Co. v. W. U. Tel. Co.,* 83 Ala. 498.

WILLIAMS, J. This action was commenced on December 18, 1907, in the district court of Okmulgee county by the plaintiff in error as plaintiff against the defendants in error as defendants. After issue was joined, the cause on October 5, 1908,

was submitted to the court on an agreed statement of facts, and judgment rendered in favor of the defendants.

1.   It is essential to determine whether any of the following pragraphs of the oil and gas lease, upon which this action was based, precluded the plaintiff from obtaining relief in equity; said paragraphs being *in haec verba:*

"The party of the second part further agrees that, in case no well be drilled for oil or gas within two years from the date hereof, all rights and obligations secured under this grant and demise shall cease upon notice in writing being served by the parties of the first part, unless the party of the second part shall elect from year to year to continue this grant and demise in force as to any or all portions of the premises by paying in advance an annual rental of $24.00 per year for all of said land or such portion thereof as the party of the second part may designate, until a well is drilled, provided that upon the completion of said well the above provided for rentals shall cease.   All payments of said rentals to be made at the 1st National Bank, Boynton to the credit of the parties of the first part.

"The party of the second part shall have the right to remove any and all fixtures placed upon said premises.

"The party of the second part shall have the right to discharge any incumbrance upon said premises, and shall have a lien thereon for the amount so paid,. together with all costs and expenses incurred.

"It is hereby further agreed that the party of the second part shall have the right at any time to surrender and terminate this grant and demise by serving written notice upon the parties of the first part of such intention, after which all payments or liabilities to accrue shall cease and determine."

This lease was executed on May 7, 1904, by Sallie Garrett Scott, the original allottee, as party of the first part, to John W. Kolachny, as party of the second part, who was the plaintiff in this action in the court below, for a cash bonus or consideration of $5.   The oil lease was duly filed for record, but never approved by the Secretary of the Interior.   Thereafter one of the defendants, to wit, F. B. Severs, purchased said land from said Sallie Garrett Scott; her restrictions against the alienation thereof hav-

ing been removed prior to the time she executed the oil and gas lease to the plaintiff, and he (Severs) then leased same to his codefendants for oil and gas purposes. This court has held that such a lease, when executed by an allottee whose restrictions against alienation had been removed, was not required to be approved by the Secretary of the Interior. *Eldred et al. v. Okmulgee Loan & Trust Co.,* 22 Okla. 747, 98 Pac. 929.

Does the surrender clause as hereinbefore set out render the lease such a contract as a court of equity will refuse to enforce? The defendant Severs under an agricultural lease was in possession of the land covered by the oil and gas lease at the time the same was obtained by the plaintiff from the allottee, and continued in such possession up to the time he acquired the fee from such allottee, and thereafter as the owner of the fee; the plaintiff never having been in possession of said land in any way whatever. In *Superior Oil & Gas Co. v. Mehlin,* 25 Okla. 809, 108 Pac. at page 545, it is said:

"From the foregoing, it will be noted that the lessee under the terms of the lease could delay the beginning of any well upon the land described for practically 15 years, and then, if at the end of that period of time he desired to delay longer, there was a proviso allowing it (for a consideration not specifically named) to hold the land indefinitely, without beginning any operations whatsoever. Thus, while by a decree defendant might be compelled to enter into this lease, no court could under its terms exercise any power to compel the lessee to operate. Under its terms, it is left entirely to the action of the lessee to either drill for oil or gas, or not drill, and there is no forfeiture or burden provided for during this 15-year term in which the lessee may deprive the owner of any of the benefits whatsoever of having his land exploited. The general rule in such cases is that contracts unperformed, optional as to one of the parties, are optional as to both. *Venture Oil Co. v. Fretts,* 152 Pa. 451, 25 Atl. 732; *Huggins et al. v. Daley,* 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320; *Reese et al. v. Zinn et al.* (C. C.) 103 Fed. 97; *Federal Oil Co. v. Western Oil Co.,* 121 Fed. 674, 57 C. C. A. 428. The favorable presumptions which are usually indulged in behalf of ordinary lessees are not enjoyed by those holding leases of the character whose enforced execution is sought by plaintiff in this action, for

the doctrine seems to be fundamental that, on account of the peculiar nature of the subject-matter upon which they operate, and the danger of loss to the lessor through the movement of oil and gas to surrounding lands and its withdrawal from neighboring wells, oil and gas leases are construed most strongly against the lessee and in favor of the lessor."

The lease there under consideration showed a consideration of $1 cash in hand paid, for which consideration the lessee was allowed a term of 15 years to explore for oil and gas, at the end of which time, if such development had not been commenced, the lessee was to pay the lessor a certain sum in advance for each additional year the development was delayed, no reservation being contained therein, as in this case, that at any time the lessee might at his election surrender and terminate the grant or demise by serving written notice upon the lessor, after which all liability on the part of the lessee was to terminate. *Federal Oil Co. v. Western Oil Co. et al.*, 121 Fed. 674, 57 C. C. A. 428, decided by the United States Circuit Court of Appeals for the Seventh Circuit, on October 7, 1902, is a case in point holding that such contracts cannot be enforced in equity. See authorities cited in that case, and also *Iron Age Pub. Co. v. West. Un. Tel. Co.*, 83 Ala. 498, 3 South. 449, 3 Am. St. Rep. 758; *Chadwick v. Chadwick*, 121 Ala. 580, 25 South. 631; *Collins v. Abel*, 151 Ala. 207, 44 South. 109, 125 Am. St. Rep. 24; *Nick's Heirs et al. v. Rector*, 4 Ark. 251; *Jordon v. Deaton*, 23 Ark. 704; *De Cordova v. Smith*, 9 Tex. 129, 58 Am. Dec. 136; *Meason v. Kaine*, 63 Pa. 335; *Tenn. Oil, Gas & Min. Co. et al. v. Brown*, 131 Fed. 696, 65 C. C. A. 524; *Reese et al. v. Zinn* (C. C.) 103 Fed. 97; *J. M. Guffey Petroleum Co. v. Oliver*, 79 S. W. (Tex. Civ. App.) 884; *Jennings-Heywood Oil Syndicate v. Houssiere-Latrielle Oil Co. et al.*, 119 La. 793, 44 South. 481; *Huggins et al. v. Daley*, 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320; *Cold Blast Transportation Co. v. Kansas City, etc.*, 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696.

The Supreme Courts of Kansas and Illinois in cases where the lease contains a reservation permitting the lessee to surrender or cancel the lease before the expiration of the term, but not al-

lowing the lessor the mutual privilege at will of compelling a surrender, have held that such options and contracts are not invalid at law, and not void for want of mutuality, it being the essence of an option contract that it is not mutual, the purchaser paying his money or doing what he agreed to do for the benefit, whether he will perform or claim performance of the contract, and for the consideration received the seller parting with his right of choice. *Poe et al. v. Ulrey*, 233 Ill. 57, 84 N. E. 46; *Pittsburg Vitrified Paving & Brick Co. v. Bailey et al.*, 76 Kan. 42, 90 Pac. 803, 12 L. R. A. (N. S.) 745. But, when relief is sought on such contract in equity, it is not necessarily granted.

In *Watford Oil & Gas Co. v. Shipman*, 233 Ill. 9, 84 N. E. 53, 122 Am. St. Rep. 144, it is said:

"Under this clause, appellant may surrender the lease for cancellation at any time, and thereby relieve itself from all future liability under it. The option of appellant to terminate the lease at any time upon payment of $1 deprives appellant of the right to specific performance directly or indirectly, until it has performed the contract or placed itself in such position that it may be compelled to perform the contract on its part. If the relief here sought should be granted, appellant under the cancellation clause of the lease, *may nullify the decree by exercising its option not to proceed further. A court of equity will not do a vain and useless thing by rendering a decree settling the rights of parties which one of them may set aside at his will.* Page on Contracts, § 1619; *Marble Co. v. Ripley*, 77 U. S. 339, 19 L. Ed. 955; *Express Co. v. R. R. Co.*, 99 U. S. 191, 25 L. Ed. 319. In the case last above cited, the court, on page 200, said: 'But we need not pursue the subject further, because there is one provision of the contract in this case which is fatal to the relief sought. A court of equity never interferes where the power of revocation exists. The contract stipulates that after the first year it shall cease upon the payment of $2,000 and interest. This might be made immediately upon the rendition of the decree. The action of the court will thus become a nullity.' "

The court further says:

"Cases of this character are distinguishable from a line of cases in this and other states which hold that an option contract

for the sale of real estate is valid, and may be specifically enforced after the party holding such option has, within the time specified, elected to purchase, and pays or tenders the purchase price. Such payment or tender supplies the element of mutuality, and neither party can *thereafter recede from the contract.* Such contracts have frequently been upheld and enforced in this state.  *  *  * While the power of revocation reserved in this lease has the effect of depriving appellant of equitable remedies in the nature of a specific performance, still the contract is not void for want of mutuality. The reservation of the right to cancel is not an infirmity which renders the contract void *ab initio,* but it deprives the party for whose benefit it is made of relief in equity in the nature of a specific performance."

See, also, *Taussig et al. v. Corbin,* 142 Fed. 660, 73 C. C. A. 656; *Soloman et al. v. Wilmington Sewerage Co.,* 142 N. C. 439, 55 S. E. 300, 6 L. R. A. (N. S.) 391; *Rust et al. v. Conrad et al.,* 47 Mich. 449, 11 N. W. 265, 41 Am. Rep. 720; *Knight v. Indian Coal & Iron Co. et al.,* 47 Ind. 105, 17 Am. Rep. 692; *Sturgis v. Galindo et al.,* 59 Cal. 28, 43 Am. Rep. 239.

It is not essential to determine in this case as to whether such an option would be valid at law; it being obvious that under authorities heretofore cited, which seem to be supported by reason, that equity will not decree that one party specifically perform a contract which the other party at its option may refuse to carry out. After the relief by decree should be granted to such party, he then under the cancellation clause of the lease would have it within his power to nullify the decree by exercising his right thereunder not to proceed further. A court of equity will not do a vain and useless thing by rendering a decree settling the rights of parties which one of them may at will set aside.

2. The lessee does not seem to have complied strictly with the terms of his option by placing said rentals to the credit of the lessor at the First National Bank of Boynton. The lessee tendered to the defendant F. B. Severs on May 6, 1906, through his agents the sum of $24 in cash for the annual rentals for the year beginning May 6, 1906, which was refused, but on what ground it does not appear. No further tender was made to Severs in person,

but certain certified checks were deposited in the First National Bank of Boynton for $24 on May 6, 1907, and also a similar check for $24 on May 6, 1908. Neither of these checks were cash, and no money was ever deposited in said bank to the credit of the lessor or her grantee. The tender of the rental for the year ending May 6, 1907, could keep the lease alive only for a year; that is, until May 6, 1907, at which time it expires unless continued by another valid tender. In *Jones v. Moncrief-Cook Co.*, 25 Okla. 856, 108 Pac. 403, this court said:

" 'When contracts are optional in respect to one party, delay on his part is viewed with special strictness.' In this case the defendants in error were not bound at any time to purchase this property at the price offered at any time before the termination of this lease, but, if the lessor was offered a price by a proposed purchaser and desired to sell, he was bound to notify the lessees, and in the event they accepted under the alleged option, in which they were not bound by the terms of the option to do, he was bound to sell to them and to no one else. Such unilateral contracts are construed strictly in favor of the party that is bound and against the party that is not bound."

There is nothing to show that the First National Bank of Boynton was the agent of the lessor or her grantee. In *Chapple v. Kansas City Vitrified Brick Co.*, 70 Kan. 723, 79 Pac. 666, a clause in the lease there under consideration provided:

"In case no oil or gas well is sunk on these premises within two years from this date, this lease shall become absolutely null and void, unless the second party shall elect from year to year to continue this lease by paying or depositing to the credit of the first party at the Chanute State Bank, each year, in advance, 25 cents per acre for each acre covered by this lease, until a well or other prospecting has been completed on these premises."

No well was completed within the time, and it was contended that, before the expiration of the two years, the second party deposited in the Chanute State Bank to the credit of the first party 25 cents per acre for each acre covered by the lease. The evidence showed that on January 2, 1902, the secretary of the second party (Kansas City Vitrified Brick Company), drew its check on the Chanute State Bank for $40 payable to the order of

the first party, and that one of the officers of the brick company delivered this check to its treasurer for his signature, together with a voucher receipt to be signed by the first party on receipt of the check. Then the check and voucher were delivered to the treasurer (G. N. Lindsay) of the second party, he being the cashier of the Chanute State Bank. Lindsay testified that this check and receipt were received by him on January 2, 1902, as treasurer of defendant company, and as such treasurer he signed the check, and as cashier of the bank placed it, with the receipt, in a drawer of the desk in the bank; that, under the circumstances, the plaintiffs would have been required to sign the receipt before the check would have been delivered to them, and he was so instructed. In the opinion the court said:

"No money was ever deposited by the defendant in said bank to the credit of the plaintiffs, and no credit was caused to be entered on the books of the bank by defendant. The check was not delivered to plaintiffs, and they had no information of its existence until the 17th day of February, 1902. * * * The check of the company payable to the order of plaintiffs, in the hands of its treasurer was not equivalent to placing the money in the hands of plaintiffs or depositing that amount to their credit in a solvent bank. It is immaterial that defendant was solvent, or that it had a deposit in the bank upon which it drew this check. The plaintiffs had not agreed to depend upon its solvency or to take its check. Upon the undisputed facts, the court should have instructed the jury to find for the plaintiffs."

It would seem, in addition, for the reason that the plaintiff did not make the payments in *strict* compliance with the contract in this case, he was not entitled to relief.

3. A subsequent purchaser is the proper party against whom to enforce a contract made with the prior owner of the fee. Pomeroy on Contracts § 465; *Frank v. Stratford-Handcock,* 13 Wyo. 37, 77 Pac. 134, 67 L. R. A. 571, 110 Am. St. Rep. 963; *Forthman v. Deters,* 206 Ill. 159, 69 N. E. 97, 99 Am. St. Rep. 145.

4. The lease relied upon by the plaintiff does not vest in him the title to the oil and gas in said land, and is not a grant of any estate therein, but is simply a grant of a right to prospect

for oil and gas, no title vesting until such substances are reduced to possession by extracting same from the earth—an incorporeal hereditament. *Payne et al. v. Neuval et al.,* 155 Cal. 46, 99 Pac. 476; *Richlands Oil Co. v. Morriss,* 108 Va. 288, 61 S. E. 762; *Rawlings et al. v. Armel et al.,* 70 Kan. 778, 79 Pac. 683; *Dickey v. Coffeyville Vitrified Brick Tile Co.,* 69 Kan. 106, 76 Pac. 398; *Emery v. League et al.,* 31 Tex. Civ. App. 474, 72 S. W. 603; *Detlor et al. v. Holland,* 57 Ohio St. 492, 49 N. E. 690, 40 L. R. A. 266; *Wagner et al. v. Mallory et al.,* 169 N. Y. 501, 62 N. E. 584; *Kelly v. Keys et al.,* 213 Pa. 295, 62 Atl. 911, 110 Am. St. Rep. 547; *Toothman v. Courtney,* 62 W. Va. 169, 58 S. E. 915; *Carter v. County Court,* 45 W. Va. 806, 32 S. E. 216, 43 L. R. A. 725; Thornton on Oil & Gas, §§ 51-53.

Ejectment will not lie to recover possession of the land covered by such lease against the lessor or his grantee when the lessee has never had possession under said lease ( *Kelly v. Keys, supra; Petroleum Co. v. Coal, Coke & Mfg. Co.,* 89 Tenn. 381, 18 S. W. 65; *Heller v. Dailey,* 28 Ind. App. 555, 63 N. E. 490; *Gillispie v. Fulton Oil & Gas Co.,* 236 Ill. 188, 86 N. E. 219), though ejectment will as a rule under our statute lie to recover land held for a term of years (section 6122, Comp. Laws 1909, section 4492, St. 1893; *Hurst v. Sawyer,* 2 Okla. 473, 37 Pac. 817).

This contract is sought to be enforced negatively by a cancellation of the oil and gas lease held by Galbreath and others, defendants in error herein, and an injunction restraining them from developing this land for oil and gas and to permit plaintiff to operate under his lease. This amounts to a specific performance in equity. *Fowler Utilities Co. v. Gray,* 168 Ind. 1, 79 N. E. 897, 7 L. R. A. (N. S.) 726, 120 Am. St. Rep. 344.

It follows that the judgment of the lower court is affirmed.

All the Justices concur.