DOWNEY v. GOOCH et al.

(District Court, E. D. Oklahoma. May 15, 1914.)

No. 2055.

1. MINES AND MINERALS ☞73—OIL AND GAS LEASE—RIGHTS OF LESSEE—IN-JUNCTION.

The lessee under a valid oil and gas lease, which does not grant the lessee any estate in the oil and gas, but simply a right to prospect there-for, is nevertheless entitled to equitable relief to prevent the removal of the oil and gas by a subsequent lessee.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 201, 210.]

2. SPECIFIC PERFORMANCE ☞61—OIL AND GAS LEASE—EQUITABLE RELIEF—SURRENDER CLAUSE.

In an oil and gas lease, a clause entitling the lessee to surrender the lease at any time, but providing that the clause shall cease immediately and concurrently with the institution of any suit by the lessee to enforce the lease, or any of its terms, does not prevent a court of equity from granting relief to the lessee in the nature of specific performance, since, as soon as the suit was begun, the surrender clause became ineffective, so that the lease was no longer a unilateral contract.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 183–187.]

3. MINES AND MINERALS ☞73—OIL AND GAS LEASE—EQUITABLE RELIEF—EQUITY OF LEASE.

An oil and gas lease of lands within a district not yet developed, where there was little likelihood of the oil being drained through wells on ad-joining lands, for a term of one year, and so much longer as oil and gas were produced in paying quantities, which required the lessee to commence operations within 45 days, and to drill to a depth of 2,800 feet unless oil or gas was found in paying quantities at a less depth, is not so inequitable against the lessor as to deprive lessee of his right to injunction to re-strain removal of oil and gas by a subsequent lessee, nor does an extension for 6 months of the time within which to commence operations render it inequitable.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 201, 210.]

4. MINES AND MINERALS ☞75—OIL AND GAS LEASE—EXTENSION—CONSID-ERATION.

Where the lessor extended the time for commencing an oil and gas well, under the lease, 6 months after the expiration of the time originally fixed,

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in consideration of $1 and of the lessee's agreement to drill first on adjoining land leased to him by the lessor's wife, the extension was valid, and founded on sufficient consideration.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 200.]

5. COURTS ☞365, 367—RULES OF DECISIONS—DECISIONS OF STATE COURT— RULE OF PROPERTY—EQUITABLE PRINCIPLES.

Decisions of a state court, construing oil and gas leases, in so far as they establish rules of property, are binding on the federal court, but in so far as they announce the court's view on equitable principles they are persuasive, but not binding.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 952, 955, 958, 959, 969–971.]

In Equity. Suit by F. C. Downey against C. B. Gooch and others. On complainant's application for temporary injunction against the defendants. Application granted.

Haskell B. Talley, of Tulsa, Okl., for complainant.

James C. Denton, of Muskogee, Okl., and John Q. Adams and Richard H. Wills, both of Claremore, Okl., for defendants.

CAMPBELL, District Judge. This matter now comes before the court upon complainant's application for a temporary injunction against the defendants. On January 22, 1914, Charles A. Bates, owner of the land in controversy, executed to H. B. De Ford an oil and gas lease thereon for the term of one year and as long thereafter as oil or gas should be produced. The consideration for the lease was $1 paid at the execution thereof, one-eighth of the oil produced, and $200 per year in advance for each gas well. The lessee agreed to complete a well on said premises within 4 months from the date of execution, and, if oil was found in paying quantities to continue development. A further provision of the lease was:

"The party of the second part [lessee] further covenants and agrees to commence operations within 45 days from the date of this lease, and drill to a depth of 2,800 feet, unless oil or gas is found in paying quantities at a lesser depth. Otherwise this lease becomes null and void."

Another provision of the lease was:

"The party of the second part, its successors or assigns, shall have the right at any time on the payment of ―――― dollars, to the party of the first part, his heirs, or assigns, to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine: Provided, this surrender clause and the option therein reserved to the lessees shall cease and become absolutely inoperative immediately and concurrently with the institution of any suit in any court of law or equity by the lessee to enforce this lease or any of its terms, or to recover possession of the leased land or any part thereof against or from the lessor, his heirs, executors, administrators, successors, or assigns, or any person or persons."

On the same date that the above-mentioned lease was entered into, the lessor's wife made a similar lease to the said De Ford, covering her lands adjoining those covered by her husband's lease; this latter lease being in all respects similar in its term to the former, except that operations were to begin within 60 days and the first well was to be completed within 6 months. Operations were not commenced under the

first-mentioned lease within 45 days from its execution, that time expiring on March 8th; but on March 21st De Ford and Bates went upon the land and agreed upon a location for a well, which location was made, and on the 23d of March Bates in writing agreed to an extension of the time within which to begin operations, reading as follows:

"Contract entered into this 23d day of March, 1914, between Charles A. Bates, of Catoosa, Oklahoma, and H. B. De Ford: That the time to commence operations specified in a certain oil and gas lease, made in favor of H. B. De Ford, of which this is made a part thereof, shall be extended for a term of six months from the 23d day of March, 1914.

"[Signed]    Charles A. Bates."

As a consideration for this extension De Ford paid Bates $1 at the time of its execution. He also testifies, as do several other witnesses, that a further consideration for this extension was the agreement on his part to immediately put down a second well upon the land covered by the lease of Mrs. Bates before beginning operations upon Bates' lands; the first well having already been completed on her land. This second well on Mrs. Bates' land was completed on April 28th, and on the same day De Ford moved some casing upon Bates' land, placing it at the point where the location was previously made on March 21st; it being, as he claimed, his intention to proceed immediately with a well on Bates' land. On April 27th, however, Bates executed an oil and gas lease, covering the same land, to the defendants, who, shortly after De Ford had moved the casing upon the land, entered thereon and threw the casing off the land, and undertook by force to hold it for themselves. De Ford secured a restraining order against them in the state court, but within a few days dismissed that suit, and immediately thereafter this action was commenced; Downing having acquired the lease by assignment. Bates, while admitting that he signed the 6-months extension above quoted, contends that it was the verbal understanding that the extension was to be but 30 days, instead of 6 months, and that he signed it believing that it so provided, and it was on the theory that this 30-day extension had expired that he made the lease to the defendants on April 27th. It appears from a preponderance of the evidence, however, that his contention in this respect must fail. It also appears that, while he may have told the defendants, at the time they took their lease, that his understanding was that the extension of the De Ford lease was only for 30 days, they at the time knew that as written it provided for an extension of 6 months' time.

[1] It is held by the Supreme Court of this state in Kolachny v. Galbreath, 26 Okl. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451, that a lease of this character does not vest in the lessee the oil and gas, and is not a grant of any estate therein, but is simply a grant of a right to prospect for oil and gas; no title vesting until such substances are reduced to possession by extracting the same from the earth. It is also held in the same case that ejectment will not lie to recover possession of land covered by such a lease against a lessor or his grantee, when the lessee has never been in possession under the lease. But, unless for reasons to be hereafter noticed this lease is invalid or void,

or contains provisions which preclude equitable relief, certainly the lessee is entitled to protection in his right to explore for oil and gas. The bill alleges, and the proof shows, that if the defendants are not enjoined they will proceed under the terms of the lease they hold to take the oil and gas from these premises, having already, pending this suit, sunk a well several hundred feet. Certainly, if plaintiff's lease is not invalid or void, or does not contain provisions precluding equitable relief, he is entitled to an injunction restraining this destruction of the very corpus of the property to which the right given by his lease pertains. Big Six Development Co. v. Mitchell, 138 Fed. 279, 70 C. C. A. 569, 1 L. R. A. (N. S.) 332; Brewster v. Lanyon Zinc Co., 140 Fed. 801, 72 C. C. A. 213; Logan Natural G. & F. Co. v. Great Southern G. & O. Co., 126 Fed. 623, 61 C. C. A. 359; Allegheny Oil Co. v. Snyder, 106 Fed. 764, 45 C. C. A. 604.

[2] It is urged that this is in effect a suit for specific performance of the plaintiff's lease, and that, because of the surrender clause above quoted, it is a unilateral contract such as will not be specifically enforced, citing Kolachny v. Galbreath, supra. It is true that a court of equity will not ordinarily specifically enforce a contract unilateral in its terms, for the reason that it would be doing a vain and useless thing to render a decree settling the rights of the parties which one of them might set aside at will; but it will be noted that that objection cannot be urged to the clause referred to in this lease, because it is specifically provided that that clause and the option therein reserved becomes absolutely inoperative immediately and concurrently with the institution of such a suit as this. By the very terms of the lease this surrender clause is now no longer available to the lessee, and of course the plaintiff, as assignee of the lease, now stands in the original lessee's shoes and is bound by this provision. For all future considerations, the lease now stands as though that clause had never been inserted.

[3] In Kolachny v. Galbreath, supra, and Superior Oil & Gas Company v. Mehlin, 25 Okl. 809, 108 Pac. 545, 138 Am. St. Rep. 942, lessees holding oil and gas leases were refused specific performance thereof, for the reason that they were inequitable and unfair in their terms, and because by the terms of their surrender clauses they were unilateral in their nature, and the lessees, after decree in their favor, could have abandoned the property. These cases are relied upon by the defendant as authority for denying relief in this case. But it will be noted, from an examination of these cases, that the leases there involved differed from the lease now being considered in this: That there, in the one case, there was absolutely no provision for early commencement of operation, the term of the lease being for 15 years, and providing that operations should commence within the term of the lease, or, in case of failure to do so, to pay an amount not stipulated. In the other, it was provided that, in case no well was drilled within 2 years, the lessee might continue the lease in force from year to year by the annual payment of $24. Of course the effect of such a lease is to place it within the power of the lessee to hold the prop-

erty; neither developing it himself nor permitting any one else to do so, thus 'depriving the lessors of the benefits of production and enabling the adjoining properties to drain the land in the meantime, all for merely nominal consideration paid the lessor. Such a contract is manifestly inequitable. But the lease in controversy here is a very different contract. As originally drawn, it bound the lessee to begin operations upon the property within 45 days and to complete a well on the premises within 4 months. At the time the lease was entered into, the land was unproven or "wildcat" territory. It seems to me that the undertaking to commence a well within 45 days and to complete it within 4 months, to a depth of 2,800 feet, unless oil and gas be found at a lesser depth, was, under the circumstances, a very fair proposition from the standpoint of the lessor. Nor does the extension of 6 months within which to commence operations upon the property, under the facts as presented at the hearing, appear to me to necessarily inject an inequitable feature into the contract. The plaintiff and his wife had each given leases upon their adjoining lands. The proof is that the lessee had, within about 3 months from the execution of the leases, sunk two wells upon the wife's property; the second being sunk upon the wife's rather than upon the husband's at his request. Presumably the husband was interested in the development of the wife's property, as well as his own. Their interests were more or less identical. The evidence indicates that the lessee was proceeding in the utmost good faith and with reasonable diligence to explore this property for oil and gas. There was no pipe line in that vicinity to take the oil. There was no great necessity for immediate development to prevent drainage by other wells.

[4] The testimony of Bates indicates that as a matter of fact the understanding with De Ford, at the time the leases were first executed, was that he was to have 60 days, rather than 45 days, to begin operations on Bates' land, and 45 within which to begin on his wife's land, but that, in drawing the leases, the terms were inadvertently reversed. Had the lease from Bates contained the 60-day provision it was intended to contain, it would have expired on March 23d, the date the extension was executed; but the fact that the 45-day period had expired some 15 days before the extension was granted does not invalidate the extension. By the extension Bates recognized the existence of the lease and its continuing validity, and the proof indicates that under the circumstances the extension was supported by a sufficient consideration.

[5] So far as the Oklahoma cases cited establish rules of property, I consider them binding on this court. So far as they announce the view of that court upon certain equitable principles involved, they are, like all other respectable authorities, persuasive, but not binding upon the federal court. It will be noted that Judge Williams, in Kolachny v. Galbreath, expressly refrained from determining whether the option expressed in the lease under consideration would be valid at law, but bases his decision upon the ground that the lease presented such a unilateral contract as a court of equity would not specifically perform.

Upon consideration of the pleadings and proof offered at the hearing, I conclude that the temporary injunction should be granted. Order may enter accordingly, to become effective upon the execution by the plaintiff to the defendants of a good and sufficient bond appropriately conditioned, to be approved by the clerk, in the sum of $10,000.